IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JACK F. SARTOR, )
 )
        Plaintiff, )
 )
v. ) Case No. CIV-15-143-RAW-KEW
 )
CAROLYN W. COLVIN, Acting )
Commissioner of Social )
Security Administration, )
 )
        Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff Jack F. Sartor (the "Plaintiff"), on behalf of Sharon Davis, deceased, (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ."  42 U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on February 7, 1971 and was 43 years old at the time of the ALJ's decision. Claimant completed his education through the eighth grade but obtained his GED. Claimant has worked in the past as a custodian, shop hand, forklift driver, and tire center worker. Claimant alleges an inability to work beginning

3

August 15, 2008 due to limitations resulting from pain in the back, legs, neck, shoulders as well as psychological problems.

**Procedural History**

On November 9, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On October 2, 2013, Administrative Law Judge ("ALJ") Bernard Porter conducted an administrative hearing by video with Claimant appearing in Fort Smith, Arkansas and the ALJ presiding in McAlester, Oklahoma. On January 8, 2014, the ALJ issued an unfavorable decision. The Appeals Council denied review on March 7, 2015. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the RFC to perform light work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) reaching an improper RFC determination; and (2) making inadequate and inconsistent findings at step five.

**RFC Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of lumbar disc disease status post fusion with radiculopathy, mild degenerative joint disease of the bilateral shoulders, mild degenerative joint disease of the hips, hypertension, restless leg syndrome, obesity, major depressive disorder, generalized anxiety disorder, and personality disorder. (Tr. 14). The ALJ concluded that Claimant retained the RFC to perform light work. In so doing, he determined Claimant could lift and carry 20 pounds occasionally and ten pounds frequently; could sit for six hours, stand for six hours, and walk for six hours all within an eight hour workday; could occasionally use foot controls, reach overhead and climb ramps or stairs; could never climb ropes, scaffolds or ladders and crawl; could frequently balance, stoop, and crouch and occasionally kneel; avoid exposure to unprotected heights, moving mechanical parts and temperature extremes. Due to psychologically based factors, Claimant was found to be able to perform simple tasks and make simple work related decisions; have

5

frequent interaction with supervisors and co-workers but no interaction with the public. (Tr. 19). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of merchandise marker, remnant sorter, and hand bander, all of which the ALJ found to exist in sufficient numbers both regionally and nationally. (Tr. 28). As a result, the ALJ found Claimant was not disabled from November 30, 2011 through the date of the decision. (Tr. 29).

Claimant first contends the ALJ did not consider additional mental limitations. Claimant refers to a report from consultative examiner, Dr. Theresa Horton. Dr. Horton, a licensed psychologist, performed a consultative mental status examination on Claimant. She diagnosed Claimant with Dysthymia, Early Onset, Major Depressive Disorder, Recurrent, Moderate, and Personality Disorder, NOS. (Tr. 419). She concluded in her narrative statement that Claimant was "capable of understanding, remembering and managing simple and somewhat more complex instructions and tasks. His pace is somewhat slow and likely will interfere with level of productivity. He does appear capable of adequate social and emotional adjustment in many settings, though likely not do as well in high paced public environments. . . ." Id.

The ALJ assigned "little weight" to Dr. Horton's opinion

because it was allegedly inconsistent with the medical record as a whole. The ALJ gave generalized reasons for rejecting Dr. Horton's opinion after she conducted an examination of Claimant. Essentially, the ALJ states that because no treating source has found Claimant unable to work due to mental restrictions, Dr. Horton was unable to make objective findings on Claimant's functionality or those findings were not entitled to consideration.

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. Doyle v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003); 20 C.F.R. § 416.927(c). He must provide specific, legitimate reasons for rejecting any such opinions. The ALJ must also give consideration to several factors in weighing any medical opinion. Id.; 20 C.F.R. § 416.927(d)(1)-(6). Moreover, an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007).

On remand, the ALJ shall provide specific bases for rejecting Dr. Horton's findings on productivity and slow thought processing. Should the ALJ find it informative to order a medical source statement from Dr. Horton, he should do so on remand as well.

Claimant also contends the assessment by Dr. Robert Spray

7

dated February 26, 2014 which he attaches to his brief.  Claimant states that the statement was sent to the Appeals Council but neither is contained in the record before this Court.  The regulations permit the submission of evidence to the Appeals Council if it is new, material, and related to the period on or before the date of the ALJ's decision.  Chambers v. Barnhart, 389 F.3d 1139, 1142 (10th Cir. 2004).  It is assumed that the evidence meets the criteria if the Appeals Council accepts the evidence.  Krauser v. Astrue, 638 F.3d 1324, 1328 (10th Cir. 2011).  If the new evidence relates to the relevant period, the ALJ must be given an opportunity to consider it.  Id. at 1329.  The problem in this case is the record contains no indication that Dr. Spray's statement was ever received into the record by the Appeals Council.  As such, this Court cannot consider its content.

Claimant next contends the ALJ did not properly consider the medical source statement of his treating physician, Dr. Myra Gregory dated October 4, 2013.  Dr. Gregory found Claimant could sit for 30 minutes at a time and in an eight hour workday; stand for 20 minutes at a time and in an eight hour workday; walk for 20 minutes at a time and in an eight hour workday; use an assistive device "sometimes"; require alternating between sitting and standing; occasionally lift and carry up to ten pounds and rarely

lift up to 20 pounds; have limited use of the upper and lower extremities; occasionally push/pull, but rarely work in extended position, work above shoulder level, work overhead, and reach; occasionally grasp and finger/fine manipulation; occasionally bend but rarely squat, crawl, or stoop. (Tr. 492-93). Dr. Gregory found Claimant could crouch, balance, climb stairs, ladders, ramps, and scaffolds for five minutes each and kneel for two minutes; and Claimant must completely avoid dangerous moving machinery. (Tr. 494).

The ALJ afforded Dr. Gregory's opinion "diminished weight." The bases for doing so offered by the ALJ is flawed. For instance, the fact Dr. Gregory found Claimant is restricted in fine manipulation is not obviated by the finding by another physician that he had 5/5 strength in his upper extremities. (Tr. 24). The treating physician's opinion is entitled to greater deference than demonstrated by the ALJ.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory

diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be

10

"sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

On remand, the ALJ shall re-evaluate Dr. Gregory's opinion and provide specific and legitimate reasons for rejecting any portion of it and the weight assigned to it.

Claimant challenges the ALJ's credibility determination. Since the ALJ must reconsider the medical opinion evidence on remand, he should also reassess Claimant's credibility in light of the medical evidence.

### Step Five Findings

Claimant asserts the hypothetical questioning of the vocational expert was flawed. Given the reassessment of the RFC findings after consideration of the medical opinion evidence, the ALJ shall re-evaluate his questioning of the vocational expert after reconsidering his RFC determination.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not

applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and the case be **REMANDED** to Defendant for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of August, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE